IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GERALD HOWELL | : | CIVIL ACTION |
| | : | |
| v. | : | No. 05-2843 |
| | : | |
| MARILYN S. BROOKS, et al. | : | |

**MEMORANDUM**

**Chief Judge Juan R. Sánchez**                                                                          **April 20, 2023**

Gerald Howell brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He asserts five claims, including a claim for violation of his Sixth Amendment right to counsel of choice.[1] After Howell's retained counsel, Hugh Clark, entered his appearance, the trial court denied Clark's requests for a continuance without explanation. Clark was forced to proceed with a death penalty trial without adequate preparation eleven days later. The denial of a continuance in this case was arbitrary and violated Howell's Sixth Amendment right to counsel of choice. Because this violation was a structural error, it mandates reversal. Accordingly, the petition for a writ of habeas corpus will be granted.

**BACKGROUND**[2]

On Christmas Eve of 1982, Herbert Allen was shot in Philadelphia; he died as a result. The police did not recover any physical evidence, except for a blood stain on the street. On January 12,

---

[1] Howell's other claims assert violation of his due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963), violation of his Sixth Amendment right to effective assistance of counsel, violation of his due process rights through use of fabricated evidence and perjured testimony at trial, cumulative prejudice based on the preceding violations, and actual innocence. Pet'r's Am. Pet. Under 28 U.S.C. § 2254 & Supp. Mem. Law (hereinafter "Am. Pet.") 16, ECF No. 88.

[2] Although this case has a long history, the Court only recounts the events relevant to Howell's Sixth Amendment claim. For a fuller recitation of the underlying facts and procedural history, see *Howell v. Superintendent Albion SCI*, 978 F.3d 54, 55-59 (3d Cir. 2020).

1

1983, Gerald Howell was arrested for the murder. The Philadelphia County Court of Common Pleas appointed Noah Gorson, Esq. to represent Howell. App. 92 ¶ 2, ECF No. 88-1. Gorson had been admitted to the bar only fifteen months earlier, in October of 1981, and he had never tried a homicide case. App. 88, 93 ¶ 5. After Howell's arraignment on February 9, the Commonwealth indicated it would seek the death penalty. App. 92 ¶ 4.

On October 3, 1983, Howell's family contacted Hugh Clark, Esq. regarding representation. App. 93 ¶ 5. They "expressed grave concern over Mr. Gorson's inexperience" in homicide cases and stated they "had been trying for some months to secure sufficient monies to retain an attorney." *Id.* Three days after this conversation, on October 6, 1983, Howell's family hired Clark. *Id.* ¶ 6. That same day, Clark met Howell and Gorson and went to court to enter his appearance. *Id.* ¶ 7. Clark then learned a suppression hearing was scheduled for that afternoon. *Id.* ¶ 8. The trial court rejected his request to continue the hearing, and Clark proceeded "despite the fact that he had less than ten (10) minutes to prepare." *Id.* ¶ 10. Gorson also sat at counsel's table, but Clark "was so uninformed as to facts of the case and the basis of the Motion to Suppress, he was not in a position to even know what questions that it would be productive to ask of Mr. Gorson." App. 93-94 ¶ 10. Moreover, Gorson withdrew his appearance before testimony. App. 90, 104. The Commonwealth completed its presentation, and the court continued the remainder of the hearing to the next day. App. 94 ¶ 11.

On Friday, October 7, 1983, however, the court did not reconvene the suppression hearing and instead continued it again, to October 17 (the date of trial). *Id.* ¶ 13. Clark tried to contact the trial judge, the Honorable Juanita K. Stout, by going to chambers "but was unable to make contact." *Id.* Monday, October 10 was a holiday. *Id.* ¶ 14. On Tuesday, October 11, Clark was attached for a robbery jury trial and a drunk driving waiver trial before two other judges. *Id.* ¶ 15.

2

Despite these commitments, he again tried to contact the judge or her staff in the morning, "but was unable to do anything but leave a message at the office." *Id.* ¶ 16. He was told Judge Stout would not return to chambers until October 17. *Id.*

On Wednesday, October 12, Clark sent a letter to Judge Stout formally requesting a continuance. App. 91. The letter stated:

> I realize that your Honor is reluctant to continue this or any other case because of the scheduling nightmares that have been occasioned by the recent edicts of the Supreme Court. However, I must respectfully suggest to your Honor that eleven (11) days is simply not enough time to properly prepare a case of this nature. The caption for this case indicates that it has not been in the system very long, and . . . neither the defendant nor his lawyer are responsible for the small delay so far.

*Id.*[3] Clark also offered, "if your Honor wishes it," to "file a formal Application for Continuance . . . so that the record will fully justify your granting my request." *Id.* He hand-delivered the letter to Judge Stout's administrative assistant. App. 95 ¶ 17.

On Thursday, October 13, Clark spent the morning at two different courts for other cases. *Id.* ¶ 18. When he returned to his office, Judge Stout's administrative assistant called and told Clark the request was denied. *Id.* On Monday, October 17, Clark filed a formal Petition for Continuance. App. 92-97. He recounted much of the preceding background and explained why he needed the continuance:

> Petitioner has endeavored to properly prepare this case for trial . . . but it has been impossible to do all that is demanded in a capital case in a eleven-day time frame. Already, Petitioner has been forced to "cut corners" and/or eliminate from consideration critical components of a normal trial preparation. This hurried and harried manner of preparation is steadily working to the Defendant's detriment, and is inconsistent with [the Constitution's requirements].

---

[3] The reference in Clark's letter to generalized "scheduling nightmares" is the only information in the record that even hints at why Judge Stout did not continue trial.

3

App. 95 ¶ 19. Clark then detailed the "minimum" tasks he needed to complete to "effectively represent" Howell:

> a. Review the Quarter Session file, the portions of the District Attorney's file that are "discoverable", and the file of Mr. Gorson.
> b. Research and brief the relevant constitutional challenges to the death penalty.
> c. Inspect all of the physical evidence that is proposed to be used at trial.
> d. Retain and prepare a private investigator to assist me in this case.
> e. Compile voir dire questions that are compatible with the existing case law.
> f. Attempt to interview the witnesses for the prosecution.
> g. Procure and review all notes of testimony and statements given by Commonwealth witnesses.
> h. Put together a defense by securing alibi witnesses, character witnesses, and witnesses who will contradict the Commonwealth version of this incident.
> i. Prepare for the penalty hearing with witnesses and legal memoranda, in the event of a first-degree murder conviction.

App. 95-96 ¶ 20. He reiterated that "[d]espite due diligence, Petitioner has been unable to come close to doing all of the above in the time that has been allotted him." App. 96 ¶ 21. Clark also addressed issues of judicial administration. He noted the court and the District Attorney had not "offered any reason why it would be improper, impractical, or prejudicial" to grant a continuance. *Id.* ¶ 22. He also observed that enough time remained under the state speedy trial rule to grant a continuance, and stated Howell was willing to exclude the resulting delay from speedy trial calculations. App. 96-97 ¶ 23. Clark asked for a continuance to December 5, 1983, a period of 49 days. App. 97. The prosecution did not oppose the request. App. 107.

Judge Stout denied the continuance, and no explanation for her decision appears on the record. That same day – eleven days after Clark entered his appearance – jury voir dire commenced. After trial, Howell was convicted of murder, robbery, and possession of instruments of a crime based on the testimony of five teenage witnesses.[4] Ct. C.P. Phila. Cnty. Crim. Docket

---

[4] Three of those witnesses have since recanted and identified another man, Kenneth Parnell, as Allen's murderer. One of the recanting witnesses had a child with Parnell, yet Clark was not

4

No. CP-51-CR-0138421-1983, at 3. "He was sentenced to life imprisonment and then began his long journey through the appellate and collateral review processes." *Howell*, 978 F.3d at 57.

The part of that journey relevant to this petition began with Howell's 2018 motion to reopen his habeas petition under Federal Rule of Civil Procedure 60(b)(6). This Court initially denied the motion. After remand from the Third Circuit and three evidentiary hearings, this Court granted the motion on September 6, 2022, holding Howell had made a sufficient showing of actual innocence to overcome the untimely filing of his federal habeas petition under *McQuiggin v. Perkins*, 569 U.S. 383 (2013). Order, Sept. 6, 2022, ECF No. 83. Howell filed an amended petition on October 21, 2022, and the Government filed a response on December 27, 2022. Oral arguments were held on February 2, 2023.

**STANDARD OF REVIEW**

Under 28 U.S.C. § 2254(a), a district court may consider an application for a writ of habeas corpus by a petitioner "in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws . . . of the United States." But a court cannot grant relief unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Howell concedes he did not exhaust the claims in his amended habeas petition in state court and that these claims are procedurally defaulted. *See* Am. Pet. 15, ECF No. 88; s*ee also* App. 115-34 (Direct Appeal Br. for Appellant); App. 135-39 (PCHA Pet.).

However, "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* [*v. Delo*, 513 U.S. 298 (1995)]

---

allowed to introduce evidence of her bias at trial. Parnell himself testified at Howell's preliminary hearing, but later confessed to Allen's murder. *See Howell*, 978 F.3d at 57-59. Finally, a fourth witness who testified against Howell at trial was murdered before he could testify in a later homicide case against Parnell. *Id.* at 61 n.10.

. . . or . . . expiration of the statute of limitations." *McQuiggin*, 569 U.S. at 386. This "exception[ ] is grounded in the equitable discretion of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." *Id.* at 392 (internal quotation marks and citation omitted). Accordingly, if a petitioner "persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt," then the court may consider the merits of the habeas claim(s). *Schlup*, 513 U.S. at 329. This Court's prior finding that Howell made a sufficient showing of actual innocence to overcome the untimeliness of his habeas petition is also sufficient to overcome any procedural bar, so the Court may consider Howell's claims on the merits pursuant to *Schlup*. Order, Sept. 6, 2022, ECF No. 83. And because the state courts did not adjudicate any of Howell's amended habeas petition claims on the merits, the Court exercises de novo review. *Cone v. Bell*, 556 U.S. 449, 472 (2009).

**DISCUSSION**

In his amended habeas petition, Howell asserts five claims. *See supra* note 1. The Court's decision, however, hinges on his second claim.[5] The Court concludes the trial court violated Howell's Sixth Amendment right to counsel of choice because, without explanation or justification, it denied retained counsel's continuance requests. In so doing, the trial court forced counsel to proceed to trial in a death penalty case eleven days after entering an appearance, without adequate opportunity to interview witnesses and prepare a defense, in a case that relied heavily on

---

[5] The Government concedes that Howell is entitled to relief on his *Brady* claim. Respondents' Resp. Pet'r's Am. Habeas Corpus Pet. 2, ECF No. 97. Because this conclusion "moot[s] the remainder of the petition" the Government does not address his other claims in its Response. *Id.* at 2 n.1. At oral argument, the Government did not concede Howell's Sixth Amendment rights were violated. Oral Arg., Feb. 2, 2023 (not transcribed). But the Government acknowledged that whether the trial court's denial of a continuance was arbitrary is a "factual question" on which the record is "sparse." *Id*. The Government agreed that if the Court found a Sixth Amendment violation, it would be structural error. *Id.*

witness testimony. This Sixth Amendment violation was structural error mandating reversal, and so the Court will grant Howell's petition for a writ of habeas corpus.

The Sixth Amendment to the United States Constitution states: "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." For defendants who do not require appointed counsel, the Sixth Amendment encompasses the right to representation by counsel of choice. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006). While there is a "presumption in favor of counsel of choice," *Wheat v. United States*, 486 U.S. 153, 160 (1988), the right is not absolute, *see, e.g.*, *Randolph v. Sec'y Pa. Dep't Corr.*, 5 F.4th 362, 374 (3d Cir. 2021) (listing limitations). As explained by the Supreme Court:

> [n]ot every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel. Trial judges necessarily require a great deal of latitude in scheduling trials. . . . Consequently, broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary "insistence upon expeditiousness in the face of a justifiable request for delay" violates the right to the assistance of counsel.

*Morris v. Slappy*, 461 U.S. 1, 11-12 (1983) (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)).

When a defendant requests a continuance to allow counsel of choice time to prepare for trial, a court must balance the defendant's Sixth Amendment right against "sufficiently countervailing reasons." *Randolph*, 5 F.4th at 377. These reasons include the demands of the court's calendar, the ethical standards of the legal profession, and the court's interest in "ensuring . . . that legal proceedings appear fair to all who observe them." *Gonzalez-Lopez*, 548 U.S. at 152 (citation omitted). They also include the "swift and efficient administration of criminal justice" and fairness to the prosecution. *Randolph*, 5 F.4th at 378 (citation omitted). This balancing test grants trial courts "wide latitude," *Gonzalez-Lopez*, 548 U.S. at 152, but an unreasoning and

arbitrary denial violates the Sixth Amendment, *Morris*, 461 U.S. at 11-12. Indeed, the Third Circuit recently affirmed that "if the Sixth Amendment's guarantee to one's counsel of choice is to mean anything, it must mean that a criminal defendant may select and retain the counsel of his choice, and the trial court *must make every reasonable accommodation* to facilitate that representation." *Randolph*, 5 F.4th at 378 (emphasis added).

The facts of this case make the Sixth Amendment counsel of choice balancing test simple. Howell had a right to proceed with Clark as counsel of choice. Howell did so. But the Supreme Court has recognized there may be circumstances "when although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." *United States v. Cronic*, 466 U.S. 648, 659-60 (1984). This is such a case. Howell's counsel of choice, Clark, clearly stated he was not adequately prepared for trial. *Cf. Morris*, 461 U.S. at 12 ("In the face of an unequivocal and uncontradicted statement by [defense counsel] that he was fully prepared and 'ready' for trial, it was far from an abuse of discretion to deny a continuance."). Clark only had eleven days to prepare, and this period included other trial commitments and a holiday. As Clark advised the trial court, despite due diligence he was not able to hire an investigator, interview the prosecution's witnesses, or find defense witnesses to contradict the Commonwealth's case. In a homicide case based largely on witness testimony, with no physical evidence linking Howell to the crime, these steps would have been crucial. *See supra* note 4. Given the high stakes – Howell potentially faced the death penalty – his Sixth Amendment rights were at their high point.

The "scheduling nightmares" referenced by Clark in his letter to Judge Stout are the only counterweight mentioned in the record. App. 91. The trial court had discretion to consider its

8

schedule, but a court's schedule "does not automatically trump all other interests. . . . [E]ven the inconvenience of pushing a trial back a month or so can easily be outweighed by a defendant's interest in having counsel of choice." *United States v. Sellers*, 645 F.3d 830, 838 (7th Cir. 2011). And the surrounding circumstances provided no other "countervailing reasons" to justify denial. *Randolph*, 5 F.4th at 377. Howell's family hired Clark as soon as they could afford to, and Clark requested a continuance as soon as he entered his appearance. Clark then made multiple efforts to contact Judge Stout before putting his request in writing, twice. The defense had not been responsible for any delay. On the face of these facts, the continuance request was not an improper, last-minute attempt to delay "the swift and efficient administration of criminal justice" or game the system. *Randolph*, 5 F.4th at 378 (citation omitted); *cf. United States v. Cordy*, 560 F.3d 808, 816 (8th Cir. 2009) (affirming denial of a continuance where the defendant's "request to sever a ten month professional relationship two weeks before trial suggests that a desire for delay was the primary factor motivating the request"). Finally, the prosecution did not oppose the request, and the trial court did not indicate "it would be improper, impractical, or prejudicial" to grant the continuance. App. 96 ¶ 22.

Because Clark clearly stated he was not ready for trial and "the state trial court offered no justification for denying the continuance motion," *Randolph*, 5 F.4th at 377, concerns of judicial administration did not outweigh Howell's rights. *Cf. United States v. Zangwill*, 197 F. App'x 888, 893 (11th Cir. 2006) (denying a Sixth Amendment claim where "[t]he court weighed the competing interests at stake, and concluded that an additional delay in the interests of accommodating [defendant's] new counsel . . . was outweighed by the inconvenience to the government and the burden on the court"). As such, the denial of a continuance was arbitrary and violated Howell's Sixth Amendment right to counsel of choice. *See Randolph*, 5 F.4th at 377.

When the right to counsel of choice is "wrongly denied . . . it is unnecessary to conduct an ineffectiveness or prejudice inquiry" and the denial is "unquestionably" structural error. *Gonzalez-Lopez*, 548 U.S. at 148, 150 (citation omitted). Structural error "infect[s] the entire trial process and necessarily render[s] [it] fundamentally unfair," and it "requires automatic reversal." *Glebe v. Frost*, 574 U.S. 21, 23 (2014) (citation omitted). Thus, the Court need not conduct a *Strickland v. Washington* analysis or adjudicate Howell's other claims. 466 U.S. 668 (1984). Because the trial court wrongfully denied Howell's request for a continuance to allow counsel of choice time to prepare for trial, the Court will grant the petition for a writ of habeas corpus.

An appropriate Order follows.

BY THE COURT:


 /s/ Juan R. Sánchez
Juan R. Sánchez, C.J.